AO 91 (Rev. 11/11) Criminal Complaint AUSA Wesley A. Morrissette (312) 353-5306

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANDREW GARLAND | CASE NUMBER: 24 CR 530 |

**CRITICAL: FILED 11/15/2024 THOMAS G. BRUTON CLERK, U.S. DISTRICT COURT**

# CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about November 14, 2024, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 2113(a) | by intimidation, took from the person and presence of a bank employee approximately $5,050 in United States currency belonging to, and in the care, custody, control, management, and possession of Huntington Bank, 222 North LaSalle Street, Chicago, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation; |

This criminal complaint is based upon these facts:

 X   Continued on the attached sheet.

 /s/ Cameron Gordon (MDW w/ permission)
 CAMERON GORDON
 Special Agent, Federal Bureau of Investigation (FBI)

SWORN TO AND AFFIRMED by telephone

Date: November 15, 2024 *M. David Weisman*
 *Judge's signature*

City and state: Chicago, Illinois M. DAVID WEISMAN, U.S. Magistrate Judge
 *Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, CAMERON GORDON, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been so employed for two years. My current responsibilities include the investigation of violent crimes, including, among others, kidnaping, bank robbery, and the apprehension of violent fugitives.

2. This affidavit is submitted in support of a criminal complaint alleging that ANDREW GARLAND has committed bank robbery, in violation of Title 18, United States Code, Section 2113(a) (the "**Subject Offense**"). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging GARLAND with the **Subject Offense**, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the **Subject Offense**.

3. This affidavit is based on my personal knowledge derived from my own investigation, observations, and actions; information provided to me by other law enforcement agents, as well as by persons with knowledge of the offense; my review of surveillance video screenshots and other evidence; my own training and experience as an FBI Special Agent; and the experience and training of other agents.

I.  FACTS SUPPORTING PROBABLE CAUSE

4.  As outlined below, on or about November 14, 2024, at approximately 4:40 p.m., a man robbed the Huntington Bank located at 222 North LaSalle Street in Chicago, Illinois (the "Huntington Bank"). The SUBJECT escaped with approximately $5,050, which included an electronic tracking device. Immediately after the robbery, the bank's tracking device travelled from the Huntington Bank to 1 East 11th Street in Chicago, Illinois, where law enforcement apprehended the SUBJECT in a taxicab. Upon being *Mirandized*, the SUBJECT, later identified as ANDREW GARLAND, waived his rights and confessed to committing the robbery.

A.  **Robbery of Huntington Bank on November 14, 2024**

5.  Per surveillance footage, on November 14, 2024, at approximately 4:40 p.m., a black male (the "SUBJECT") entered the Huntington Bank located at 222 North LaSalle Street in Chicago, Illinois, and approached teller station #1. The SUBJECT wore a purple/pink medical mask, a neon yellow jacket, dark grey jogging pants with white lettering on the left thigh, and dark colored shoes. Below is a screenshot of the SUBJECT taken from the Huntington Bank surveillance:



2

6. According to Victim Teller 1, she was counting her teller drawer at teller station pod #2 when the SUBJECT entered the bank. Victim Teller 1 had $4,000 in her hands at the time, which consisted of two stacks of $2,000, each bound by purple straps labeled "$2,000."

7. According to Victim Teller 1, upon entering, the SUBJECT walked to the side of teller station pod #1. This "alarmed" Victim Teller 1.

8. According to Victim Teller 1, she asked the SUBJECT if she could help him. The SUBJECT responded with something to the effect of, "Open the drawer, give me the money." Victim Teller 1 tried to open the drawer in teller window pod #1, but the drawer was locked. The SUBJECT then stated something to the effect of, "I'm not playing with you. I'm not playing with you. I'm not playing with you. Just give me the money." According to Victim Teller 1, she could see the SUBJECT's eyes "piercing through." According to Victim Teller 1, she felt intimidated and scared.

9. According to Victim Teller 1, she then directed the SUBJECT to her teller station pod #2. Victim Teller 1 said that she attempted to hide the $4,000 from the SUBJECT, but he saw it when she opened her teller drawer. The SUBJECT then said something to the effect of "Give me that" once he saw the $4,000.

10. According to Victim Teller 1, once she opened the drawer of teller station pod #2, the SUBJECT reached in the drawer and took all the twenty-dollar bills, which included a GPS tracking device.

3

11. According to Victim Teller 1 and video footage, the SUBJECT exited the bank at approximately 4:41 p.m. and crossed the street northbound on North Wells Street.





12. According to an audit performed by Huntington Bank, the SUBJECT took approximately $5,050. Huntington Bank personnel confirmed that the deposits of the Huntington Bank were insured by the Federal Deposit Insurance Corporation at the time of the robbery.

B. **The Subject's Movements After the Robbery**

13. Chicago Police Department POD camera footage shows a person matching the general description and wearing the same clothes as the SUBJECT

4

walking near the Riverwalk on the northeast corner of N. Wells Street and W. Wacker Drive at approximately 4:41 p.m.



14. Law enforcement was able to track the movement of the stolen money via Huntington Bank's GPS tracker hidden in the stack of twenty-dollar bills. Below is the GPS locator's path from the time of the robbery until the time of GARLAND's arrest, further described below:



15. At approximately 5:12 p.m., law enforcement tracked the GPS locator to two taxicabs at the corner of 11th Street and State Street. One of the taxicabs was unoccupied. Law enforcement conducted a traffic stop of the other taxicab, bearing license plate 196TX, and observed the SUBJECT laying down on the backseat attempting to conceal himself. The SUBJECT then attempted to get control of the driver's side of the vehicle, causing the vehicle to move. Law enforcement then tazed the SUBJECT while the taxicab was in motion. Law enforcement recovered from the front and rear passenger seats U.S. currency appearing to be the proceeds of the bank robbery. Law enforcement also recovered U.S. currency from the SUBJECT's person.

16. Per the driver of the taxicab, he picked up the SUBJECT at 118 West Grand Avenue. The taxi driver confirmed that the money inside the taxicab belonged to the SUBJECT and was not inside the vehicle before the SUBJECT entered the taxicab.

17. At approximately 5:35 p.m., Chicago Police Department officers brought Victim Teller 1 to the arresting location, where she positively identified GARLAND as the person who robbed the bank that day.

**C. GARLAND's Arrest and Custodial Interview**

18. Law enforcement arrested the SUBJECT at approximately 5:35 p.m. Upon arrest, the SUBJECT provided his name as "Andrew Garland" and gave law enforcement his date of birth. Officers obtained the below photograph for ANDREW GARLAND from law enforcement databases:

6



19. At the time of arrest, GARLAND possessed the Huntington Bank GPS tracker, two stacks of $2,000 each bound by a purple strap labeled "$2,000," and a purple medical mask. GARLAND was wearing dark gray jogging pants with white letters on the left thigh. Pictures of the items recovered, as well as GARLAND's clothing are below:





20. Law enforcement informed GARLAND of his *Miranda* rights at approximately 8:53 p.m. GARLAND waived his rights and agreed to a custodial interview. In the interview, GARLAND admitted to robbing a bank in downtown Chicago, Illinois, and that the robbery involved a female teller, but did not recall the exact address of the bank. GARLAND stated, "I did it, I'm sick off of drugs. I've been up a couple of days. I need some money. I want to get my own place where I can lay my own head." When asked why Victim Teller 1 provided him the money, GARLAND stated that he did not threaten the teller but she was scared. GARLAND did not recall where his neon jacket and one strap bag were located. GARLAND stated, "I did it, I fucked up, but I did it."

## II. CONCLUSION

21. Based upon the foregoing facts, I respectfully submit that there is probable cause to believe that, on or about November 14, 2024, ANDREW GARLAND

8

did, by intimidation, take from the person and presence of bank employees approximately $5,050 in United States currency belonging to, and in the care, custody, control, management, and possession of the Huntington Bank, located at 222 North LaSalle, in Chicago, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a).

FURTHER AFFIANT SAYETH NOT.

/s/ Cameron Gordon (MDW w/ permission)
CAMERON GORDON
Special Agent
Federal Bureau of Investigation

SWORN TO AND AFFIRMED by telephone on November 15, 2024.

Honorable M. DAVID WEISMAN
United States Magistrate Judge

9